IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GERALYN S. BUELL,

    Plaintiff,

v.

CIVIL ACTION NO. WMN-97-2302

MONTGOMERY COUNTY
REVENUE AUTHORITY,

    Defendant.

```
————FILED      _____ENTERED
————LODGED  _____RECEIVED
```

SEP 1 4 2000

**MEMORANDUM OPINION**

Following a five-day trial, the jury returned a verdict in
favor of plaintiff on her claim of retaliatory discharge.  The
jury awarded damages in the amount of $135,000.00 in backpay and
$365,000.00 in compensatory damages.  Pending before the court
are defendant's motion for a new trial and to alter or amend the
judgment, plaintiff's motion for attorneys' fees and expenses,
and plaintiff's motion for an award of pre- and post-judgment
interest.  For reasons expressed more fully below, defendant's
motion for a new trial and to alter or amend the judgment is
GRANTED in part and DENIED in part; plaintiff's motion for
attorneys' fees and expenses is GRANTED in part and DENIED in
part; and plaintiff's motion for pre- and post-judgment interest
is GRANTED in part and DENIED in part.

**Motion for a New Trial and to Amend the Judgment**

Defendant asks the court to alter or amend the judgment to
comply with the statutory cap set forth in 42 U.S.C.
§ 1981a(b)(3).  Defendant also seeks to have the court grant a
new trial or in the alternative grant a remittitur on the back

pay and compensatory damage awards.  In support of the motion for

a new trial defendant contends that there was no evidence to

support a jury award of $50,000.00 in compensatory damages and a

backpay award of $135,000.00.

A.    Statutory Cap.

The jury awarded plaintiff $365,000.00 in compensatory

damages.  Defendant seeks to have the court amend the judgment to

comply with the statutory cap set forth in 42 U.S.C.

§ 1981a(b)(3) and reduce plaintiff's award to $50,000.00.   The

section provides:

> The sum of the amount of compensatory damages awarded
> under this section for future pecuniary losses,
> emotional pain, suffering, inconvenience, mental
> anguish, loss of enjoyment of life, and other
> nonpecuniary losses, and the amount of punitive damages
> awarded under this section, shall not exceed, for each
> complaining party--
>
> (A) in the case of a respondent who has more than
> 14 and fewer than 101 employees in each of 20 or more
> calendar weeks in the current or preceding calendar
> year, $50,000;
> (B) in the case of a respondent who has more than
> 100 and fewer than 201 employees in each of 20 or more
> calendar weeks in the current or preceding calendar
> year, $100,000;
> (C) in the case of a respondent who has more than
> 200 and fewer than 501 employees in each of 20 or more
> calendar weeks in the current or preceding calendar
> year, $200,000; and
> (D) in the case of a respondent who has more than
> 500 employees in each of 20 or more calendar weeks in
> the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(b)(3).  "The § 1981a caps were enacted in

apparent response to a concern about runaway verdicts in which

juries purportedly awarded plaintiffs excessive damages."   Sasaki

v. Class, 92 F.3d 232, 237 (4th Cir. 1996). Plaintiff argues
that the statutory cap should not be applied because:  1)
defendant failed to plead the statutory cap as an affirmative
defense and, therefore, has waived its right to claim the cap as
a defense; 2) defendant waived its right to assert the damages
cap by failing to have the jury resolve the factual dispute about
the maximum number of employees; 3) defendant's verdict form
makes reduction of the award impossible because it fails to
separate front pay, not subject to the cap, from compensatory
damages; and 4) defendant's affidavit regarding the number of
employees at the Revenue Authority is not new evidence and,
therefore, cannot be considered by this court.

    Federal Rule of Civil Procedure 8(c) requires a party to
plead affirmatively certain specified defenses as well as "any
other matter containing an avoidance or affirmative defense" in
its responsive pleading or it may be deemed to have waived the
defense.  "The purpose of requiring affirmative defenses to be
pleaded is to avoid surprise and to give the opposing party an
opportunity to respond." Oliver v. Cole Gift Centers, Inc., 85
F. Supp.2d 109, 111 (D. Conn. 2000); see also Blonder-Tongue
Lab., Inc. v. Univ. Of Ill. Found., 402 U.S. 313, 350 (1971).

    Although plaintiff has pointed out many cases to the court
in which failure to plead an affirmative defense results in a
waiver of that defense, she has cited no case which mandates that
Title VII's statutory cap must be pleaded as an affirmative
defense.  The cases plaintiff relies upon are ones in which the

3

limitations on damages were part of a statutory scheme separate
from the basis of recovery. Title VII's statutory cap, however,
"is evident on the face of the statute as a Congressional
limitation on the court's power to award damages to a Title VII
plaintiff." Oliver, 85 F. Supp.2d at 112. As the Oliver court
further noted, "[n]o plaintiff claiming damages under Title VII
can complain of unfair surprise, prejudice, or lack of
opportunity to respond when confronted with the CDA's limitation
of damages, because the limitation is part of the same statutory
scheme under which the plaintiff has brought his or her claim."
Id. Furthermore, it is obvious to the court that this particular
plaintiff cannot claim unfair surprise as the billing records for
her attorney indicate that research was done on the statutory
damages cap.

In line with the only cases that have specifically
considered the argument that the statutory cap on damages in
Title VII cases must be pleaded as an affirmative defense, the
court holds that the statutory cap set out in § 1981a(b)(3) is
not an affirmative defense and is not waivable. See id.; see
also Peckinbaugh v. Post-Newsweek Stations Connecticut, Inc., No.
3:96CV2475(AVC), 1999 WL 334838 at *4 (D. Conn. Mar. 17, 1999)
("The court concludes that the defendants' failure to raise the
statutory cap pursuant to 42 U.S.C. section 1981a(b)(3), until
after the jury returned its verdict does not bar application of
the statutory provisions in this case.")

4

Defendant also argues that the court cannot apply the statutory cap because there is a factual dispute as to the number of employees at the Revenue Authority during the relevant time period. In her charge filed with the EEOC, plaintiff indicated that the Revenue Authority employed "90+" individuals. Based upon this information, defendant asserts that plaintiff's compensatory damage award should be capped at $50,000.00. Defendant has also submitted the affidavit of Gayle Jamison, Office Manager for the Revenue Authority, confirming that the number of employees in 1995 did not exceed 101. Plaintiff asserts, however, that had defendant introduced evidence at trial as to the number of employees at the Revenue Authority, she was prepared to present evidence as to the true number of employees.

Without considering the affidavit of Jamison at this juncture, the court concludes on the basis of plaintiff's filing with the EEOC that the number of employees at the Revenue Authority did not exceed 101 during the relevant time period. There is nothing in the record to suggest otherwise. However, because plaintiff contends that she has evidence to prove defendant had more employees than defendant admits, the court will follow the lead of the Peckinpaugh court and allow plaintiff an opportunity to present her evidence that disputes the number of individuals employed by the Revenue Authority. Plaintiff may submit, within ten days of entry of this Order, a request for a determination of the factual issue regarding the number of individuals employed by defendant during the relevant time

5

period.  Failure to submit such a request will result in the
entry of judgment that plaintiff's compensatory damage award is
capped at $50,000.00, pursuant to 42 U.S.C. § 1981a(b)(3).

Plaintiff also argues that the verdict form utilized by the
jury makes application of the statutory cap impossible because it
failed to separate an award of front pay from the award of
compensatory damages.  Plaintiff's argument is without merit.  As
plaintiff has conceded, the issue of whether a plaintiff is
entitled to front pay is a matter for the court to decide.  See
Duke v. Uniroyal, Inc., 928 F.2d 1413, 1424 (4th Cir. 1991).
Although plaintiff contends defendant agreed to submit the issue
of front pay to the jury, the court does not concur with
plaintiff's assessment.  The court has reviewed the transcript
pointed to by plaintiff upon which it relies in making this
contention and finds there was no waiver by defendant of
submission of the issue of front pay to the court.  Because front
pay was not a matter for the jury to decide, the verdict form
does not make it impossible for the court to apply the statutory
cap in this case.  Accordingly, the court will grant defendant's
motion to amend the judgment and reduce plaintiff's award of
compensatory damages to $50,000.00 to comply with the statutory
cap.

B.   Sufficiency of Evidence to Support Compensatory Damages
     Award of $50,000.00.

Defendant asserts that the evidence was insufficient to
support a jury award of even $50,000.00 in compensatory damages.

6

Defendant asserts that the evidence does not support an award of more than $15,000.00 in compensatory damages. It is unclear to the court how defendant arrived at the $15,000.00 figure.

A motion for a new trial will be granted if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998) (quoting Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996)). As the Fourth Circuit has noted, the decision to grant or deny a new trial is within the sound discretion of the district judge and will not be disturbed absent an abuse of discretion. See id.

According to a case cited by both parties, in order for the court to grant defendant's motion for a new trial, "the judge must find that no rational jury, acting on the basis of the full evidentiary record, and without being inflamed by passion or prejudice or other improper consideration, could have awarded such a large sum of damages." Henry v. Hess Oil Virgin Islands Corp., 163 F.R.D. 237, 243 (D. Virgin Islands 1995). Defendant contends that the jury could not have awarded the amount of damages it did "without being inflamed by passion or prejudice or other improper consideration." It points the court to a number of cases where the award for compensatory damages was less than $50,000.00.

7

The court finds that the evidence was sufficient to support an award of $50,000.00 in compensatory damages. Plaintiff herself testified as to the toll her discharge from the Revenue Authority took on her. She testified that she experienced humiliation in going on interviews after her termination when trying to explain what had happened at the Revenue Authority. Plaintiff asserted that she found it difficult to handle even the most basic of daily functions as she was severely depressed. Plaintiff's testimony was corroborated by that of her friend, Victoria Jennings, whom the court found to be a credible witness. Jennings testified that plaintiff exhibited many signs typically associated with depression. Jennings further testified that the symptoms lasted for a period of years, as she stated that plaintiff had only recently begun acting like her old self.

Plaintiff also experienced physical problems as a result of losing her job, including migraine headaches, vaginal bleeding, dramatic weight loss, and high blood pressure. Defendant makes much of the fact that plaintiff had suffered from migraines and vaginal bleeding in the past. However, defendant was able to cross-examine plaintiff on this point and the jury was able to make its own determination. Furthermore, the fact that plaintiff did not provide expert medical testimony as to the physical manifestations of her termination does not defeat the jury's award. As defendant has conceded, a plaintiff is not required to present medical or other expert evidence to establish emotional

8

distress.  See Kim v. Nash Finch Co., 123 F.3d 1046, 1065 (8th
Cir. 1997).

Plaintiff also confided in Jennings that her termination
caused a financial strain and that she felt she was being
blackballed by people who were friends of hers before the
termination but would not talk to her even at present.  Plaintiff
also suffered injury to her reputation, not only as a result of
her termination, but also as a result of the rumors of an affair
with Joe Mott.  The fact that plaintiff only recently had secured
other employment comparable to her position at the Revenue
Authority serves to establish the duration of plaintiff's
suffering because of her termination.  There was sufficient
evidence to support an award of $50,000.00 in compensatory
damages for "future pecuniary losses, emotional pain, suffering,
inconvenience, mental anguish, loss of enjoyment of life, and
other nonpecuniary losses."

C.  Sufficiency of Evidence to Support Backpay Award of
    $135,000.00.

Defendant also contends that the evidence was insufficient
to support the jury's award of $135,000.00 in backpay.  Plaintiff
requested $217,000.00 in backpay and walked the jury through the
process she used to come up with this amount.  Defendant had an
opportunity to cross-examine plaintiff as to her methodology and
try to discount the process she used.

The evidence was sufficient to support the backpay award.
First, the evidence establishes that it took plaintiff almost two

9

years to secure full-time employment after being terminated by
the Revenue Authority. When plaintiff did secure employment, it
was at a salary that was lower than she had received from
defendant. Defendant contends that plaintiff failed to consider
revenue from part-time positions following her termination in
arriving at a backpay figure. However, defendant did not cross-
examine plaintiff as to the amounts. Furthermore, because the
jury did not award plaintiff the full amount requested, it is
possible that they took this interim employment into
consideration in figuring a backpay award.

Defendant also takes exception to the manner in which
plaintiff factored bonuses and salary increases into her backpay
calculation. Defendant contends the amounts proffered by
plaintiff were speculative. During her testimony, however,
plaintiff testified as to the basis for her figures and explained
her rationale. Defendant cross-examined her as to these points.
Furthermore, defendant had the opportunity to rebut plaintiff's
assertions by putting on evidence of typical raises and bonuses
at the Revenue Authority but it did not do so. Because the jury
did not return an award in the amount requested by plaintiff, it
is obvious that they gave some care to arriving at a backpay
figure, rather than blindly accepting everything offered to them
by plaintiff. The court finds there was sufficient evidence to
support the backpay award.

Defendant also argues that the backpay award should be
reduced because plaintiff failed to mitigate her damages.

10

Plaintiff counters that defendant has waived the defense of failure to mitigate by failing to affirmatively plead it. However, a defendant in a Title VII case is not required to plead failure to mitigate damages.  See Nagy v. Baltimore Life Ins. Co., 49 F. Supp.2d 822 (D. Md. 1999).

Defendant argues that plaintiff did not mitigate her damages because she only sought employment comparable to the position from which she was terminated, instead of looking for secretarial work.  Plaintiff testified, and defendant concedes, that she sent her resume to headhunters and responded to newspaper ads for jobs in human resources.  The thrust of defendant's argument is not that plaintiff did not look for work, but that she did not look for the kinds of jobs she should have been looking for, i.e., secretarial work.

The law is clear that a plaintiff need not take a demotion in order to mitigate damages.  See Williams v. Albemarle City Bd. of Educ., 508 F.2d 1242, 1244 (4th Cir. 1974).  Furthermore, defendant offered no evidence of available similar employment. It is well-settled that an employee's damages will be mitigated only if the employer is able to prove similar employment was available elsewhere.  See Ballard v. El Dorado Tire Co., 512 F.2d 901, 905 (5th Cir. 1975).  Defendant cross-examined plaintiff on the issue of mitigation and referred to plaintiff's duty to do so in her closing argument.  Furthermore, the jury was instructed on plaintiff's duty to mitigate.  Obviously, the jury did not find

11

the evidence sufficient to prove that plaintiff failed to
mitigate her damages, nor does this court.

## Motion For Attorneys' Fees

Plaintiff, as the prevailing party in her Title VII case, is
entitled, at the court's discretion, to reasonable attorneys'
fees and expenses. See 42 U.S.C. § 2000e-5(k). "The starting
point for establishing the proper amount of an award is the
number of hours reasonably expended, multiplied by a reasonable
hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).
In assessing the reasonableness of attorneys' fees, this court is
guided by the factors first articulated in Johnson v. Georgia
Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) , and later
endorsed by the Court of Appeals for the Fourth Circuit. See
Trimper v. City of Norfolk, 58 F.3d 68 (4th Cir. 1995). These
Johnson factors are:

> (1) the time and labor required to litigate the suit;
> (2) the novelty and difficulty of the questions
> presented by the lawsuit; (3) the skill required
> properly to perform the legal service; (4) the
> preclusion of other employment opportunities for the
> attorney due to the attorney's acceptance of the case;
> (5) the customary fee for such services; (6) whether
> the fee is fixed or contingent; (7) time limitations
> imposed by the client or the circumstances; (8) the
> amount in controversy involved and the results
> obtained; (9) the experience, reputation, and ability
> of the attorney; (10) the "undesirability" of the case;
> (11) the nature and length of the attorney's
> professional relationship with the client; and (12)
> awards in similar cases.

Trimper, 58 F.3d at 73.  The Johnson approach to fee calculation
begins with a determination of a base amount known as the
"lodestar" which is arrived at by multiplying the number of hours

12

reasonably expended by a reasonable hourly rate and then adjusted upward or downward based on the twelve factors listed above.  "To insure that a trial court develops a proper basis for a fees award and can adequately explain that award," the Eleventh Circuit has noted:

> First, the court must "ascertain the nature and extent of the services supplied by the attorney."  If the court finds the number of hours excessive, it should identify the hours disallowed and explain why it is disallowing them. . . .  Second, the court must determine the value of the services rendered according to the customary charges in the area and the quality of the work produced.  Special experience or expertise, or the lack of it, will be reflected in the hourly rate allowed.  When the court has finished these two steps and arrived at a nominal fee, it should then consider the remaining Johnson factors appropriate to the particular case and briefly articulate how each of these factors affect the final compensation.

Fitzpatrick v. Internal Revenue Service, 665 F.2d 327, 332 (11th Cir. 1982) (internal citations omitted).

In calculating the lodestar, a court should include all time which it deems reasonable to have devoted to the case, provided that such time is properly documented.  See Virginia Academy of Clinical Psychologists v. Blue Shield of Virginia, 543 F. Supp. 126, 135 (E.D. Va. 1982).  Counsel for plaintiff submitted to the court a detailed statement of the amount of hours expended by the attorneys and paralegals working on this case.

The obvious starting point for the court is the 1,387.90 hours claimed by plaintiff.  Of this amount, 1,352.65 hours are the time spent by attorneys working on the case, while 35.25 hours are attributable to paralegal work.  Defendant has

13

submitted a number of objections, directed at the reasonableness
of the attorneys' fees requested in this case. Defendant asserts
that plaintiff should not recover attorneys' fees for work on
claims upon which she did not prevail; therefore, her fee award
should be reduced to reflect lack of success on eight out of nine
claims. Specifically, defendant directs the court to delete the
following: 1) fees incurred in researching the unsuccessful
state law claims; 2) fees incurred in researching the § 1983
claims; 3) fees incurred on her Rule 56(f) motion; 4) fees
incurred to oppose Anthony Shore's motion to dismiss; 5) fees
incurred in pursuing the three motions for reconsideration; 6)
fees incurred in settlement negotiations with Jean Cryor; and 7)
fees incurred in speaking to the press. Defendant also asks the
court to reduce the remaining hours not spent in preparation for
trial. Defendant further argues that the hours plaintiff spent
on jury instructions and voir dire should be reduced as
unnecessary, that certain other hours should be deleted as
duplicative or unspecific, and that certain hours should be
reduced as excessive. Finally, defendant argues that plaintiff's
attorneys' fees should not be increased because of the alleged
undesirability of the case, that the fees should not be adjusted
for delay in payment, and that the expenses requested should be
reduced. The court will consider each of defendant's objections
in turn.

        "When plaintiff prevails on only some of the claims made,
the number of hours may be adjusted downward but where full

                                14

relief is obtained, the plaintiff's attorney should receive `a fully compensatory fee,' and in cases of exceptional success, even an enhancement." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174-75 (4th Cir. 1994) (quoting Hensley, 461 U.S. at 435). "[E]ntitlement to fees for one aspect of a protracted litigation does not turn narrowly on whether the party prevailed on that particular matter, but whether a separate claim or, as here, a separate proceeding is so unrelated as to justify treating it as a "separate lawsuit[ ]." Hensley, 461 U.S. at 435. If treatment as a separate lawsuit is appropriate, then a party who may have "crossed the threshold" to become the "prevailing party" in the main action would in essence lose that status with respect to the separate claims or proceedings. The Supreme Court has directed district courts not to draw overly fine distinctions in making this determination. Certainly, where the issues presented in the later proceedings or in separate claims involve the same common core of facts or related legal theories, the case "cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. "Ultimately, determinations of relatedness of claims and the quality of the overall results are not reached through application of any precise rules or formulae, but rather through an equitable judgment of the district court. . . ." Plyler v. Evatt, 902 F.2d 273, 280 (4th Cir. 1990).

15

Plaintiff argues that the results she achieved in this litigation were "excellent." However, while the jury award on her behalf was handsome, the court cannot ignore the fact that plaintiff prevailed only on one of her nine claims and did not receive all that was requested in her prayer for relief. Despite defendant's contention to the contrary, the court finds that the claims did involve a common set of core facts. However, some of the legal theories advanced were so unrelated to the one upon which plaintiff was successful, that she is not entitled to a fully compensatory award. Therefore, the court will scrutinize the time sheets for entries that do not appear to be related to the successful claim in any significant way.

D.   State Law Claims.

Counts VIII and IX of plaintiff's complaint alleged breach of an implied contract for employment and tortious interference with that implied contract of employment. The court granted summary judgment to defendants on both counts, finding that there was no implied contract for employment, and that, therefore, there could be no tortious interference.

The court finds that plaintiff's state law claims, to a large degree, addressed issues different than those on which she prevailed. For example, the claim for breach of implied contract for employment would center on the existence, or lack thereof, of the alleged contract. Resolution of the issue would involve an analysis of the law surrounding contract formation, especially as applied to the specific area of implied contracts for employment.

16

Likewise, the claim for tortious interference with contract would require a focus on tort law and the contract at issue. Because plaintiff's state law claims did not significantly contribute to the claim upon which she prevailed, the court will exclude those hours related solely to the pursuit of these claims. Accordingly, the hours claimed in entry number 4 will be deleted.

E.    Section 1983 Claims.

Counts V, VI, and VII of plaintiff's complaint assert various claims under 42 U.S.C. § 1983. Having reviewed the substance of those claims and the court's treatment of them in its granting of summary judgment to defendants, the court finds that they were not inextricably entertwined with the claims upon which plaintiff was successful. Therefore, the court will delete the hours that appear to be devoted solely to these claims and, accordingly, the hours claimed in those entries numbered 180 and 242 will be excluded.

F.    Rule 56(f) Motion.

Defendant opposes an award of attorneys' fees to plaintiff for the time spent in preparing a Rule 56(f) motion that was directed at keeping Montgomery County as a defendant in this case. Defendant contends that it is liable to plaintiff for only those fees incurred in litigating the claim against the Revenue Authority, and not for those fees incurred in litigating the claims against other defendants. In support of its position, defendant points the court to the decision of the Fourth Circuit in Rum Creek Coal Sales. In Rum Creek Coal Sales, the court

17

refused to allow a prevailing plaintiff to recover attorneys'
fees from the losing defendant related to opposing the
intervention of a third party.  See Rum Creek Coal Sales, Inc. v.
Caperton, 31 F.3d 169, 178 (4th Cir. 1994).

Although not exactly on point with the case at bar, the
logic of Rum Creek Coal Sales would suggest that a prevailing
plaintiff should not be allowed to recover attorneys' fees from a
losing defendant for hours solely attributable to another
defendant.  While fee awards are to be fair, they are not
intended to "produce windfalls to attorneys."  City of Riverside
v. Rivera, 477 U.S. 561, 580 (1986).  To make defendant
responsible for plaintiff's time expended in efforts directed
solely at other defendants would serve to make a losing defendant
an insurer of litigation.  Hensley makes clear that this is not
the standard to be used in making an award of attorneys' fees.
Such an award would not be "reasonable" as to this defendant.
Accordingly, the court will not award fees for plaintiff's
efforts based solely on other defendants and those entries
numbered 278, 291, 292, and 293 will be excluded.  The court will
delete only half of those hours listed in entry number 282 as the
entry reflects that the time claimed was spent in opposing the
motions for summary judgment as well as the Rule 56(f) motion.

G.   Opposition to Shore's Motion to Dismiss.

For the same reasons offered in opposing an award of fees
for the Rule 56(f) motion, defendant also argues that it should
not be required to pay for the hours spent in opposing the motion

18

to dismiss of another defendant. Under the authority of Rum
Creek Coal Sales, the court accepts defendant's argument and will
not award those fees listed at entry number 349.

H.   Motions for Reconsideration.

Defendant also opposes an award for attorneys fees on three
motions for reconsideration filed by plaintiff. First, defendant
argues that plaintiff is not entitled to her attorney's fees for
work done on her motion for reconsideration of October 9, 1998,
asking the court to reconsider its ruling "that the plaintiff had
failed to create a dispute of material fact that she was
terminated because of her gender." The second motion, filed on
November 2, 1998, asked the court to reconsider its earlier order
dismissing Montgomery County from the action. The third motion
for reconsideration, filed on March 12, 1999, asked the court to
reconsider its earlier grant of summary judgment to defendant on
Counts II and V (termination of employment based on gender and
denial of equal protection in violation of 42 U.S.C. § 1983).

Having considered the substance of the various motions and
the role they played in the entire litigation, the court finds
that the hours expended in preparing the second motion for
reconsideration of November 2, 1998, are not properly billed to
the Revenue Authority. The motion was directed at keeping
Montgomery County as a defendant in the instant litigation. The
Revenue Authority should not bear the costs associated with this
unsuccessful effort. See supra. Accordingly, the hours
attributable to this motion will be excluded. As plaintiff did

19

not dispute defendant's identification of which entries were applicable to this motion, the court will exclude those hours claimed in entries number 331, 333, 334, 335, 337, 344, 345, 348, 351, and 352.

However, the court declines to exclude the hours expended by plaintiff in preparing the first and third motions for reconsideration. As Hensley makes clear, it is not necessary that plaintiff prevail on every aspect of protracted litigation in order to recover attorneys' fees therefor. In this case, the first and third motions for reconsideration were intertwined with the claim upon which plaintiff ultimately prevailed and were not so removed as to justify treating them as a separate suit. Therefore, defendant's request that these fees be excluded will be denied.

## I.   Proposed 50% Reduction for Hours Not Spent in Trial Preparation.

Defendant also recommends a 50% across the board reduction for all remaining hours leading up to and including the court's ruling on the motions for summary judgment. Defendant argues that such a reduction is merited because plaintiff prevailed upon only one out of nine claims.

An award of fees should not be based simply on the ratio of claims upon which plaintiff was successful to claims raised. See Brodziak v. Runyon, 145 F.3d 194, 197 (4th Cir. 1998). The court declines to make such a sweeping reduction. As it has done above, it will consider deleting those hours that it finds are

20

not so intertwined with plaintiff's successful claim as to
justify reimbursement. The court does not find that plaintiff's
success was so limited as to support such a reduction.

J.      Communications with Delegate Jean Cryor.

Defendant contends that the hours expended by plaintiff in
communicating with Cryor regarding settlement were unnecessary.
The court, however, does not agree with defendant's assessment
and finds that the hours expended in dealing with Cryor were not
so removed from plaintiff's successful claim as to justify their
deletion. As plaintiff makes clear, Cryor was a potential
witness in this case and approached plaintiff regarding the
possibility of settlement. Therefore, the court will not
disallow the hours relating to communications with Delegate
Cryor.

K.      Press Communications.

Defendant argues that plaintiff should not be awarded her
fees incurred in connection with communications with the press.
Plaintiff insists, however, that these fees are reasonable
because the stories were part of plaintiff's proof in this case
and led to further discovery. Having reviewed defendant's
argument and plaintiff's reply thereto, the court finds that the
hours should be excluded under the holding of Rum Creek Coal
Sales. See 31 F.3d at 176 ("The legitimate goals of litigation
are almost always attained in the courtroom, not in the media.").
The court cannot find that plaintiff's efforts were aimed at
achieving litigation goals. Accordingly, the court will deny

21

plaintiff's attorneys' fees for these efforts and the time listed
in entries 53, 56, 57, 58, 78, and 468 are excluded from the
reasonable hours allowed.

I.    Hours Spent on Jury Instructions and Voir Dire.

Arguing that the time expended was excessive, defendant
argues that plaintiff's request for attorneys' fees for preparing
jury instructions and voir dire should be reduced.  Upon
reviewing plaintiff's response to defendant's argument, the court
finds that the hours were not excessive under the circumstances
and will make no adjustments thereto.

J.    Hours That Are Duplicative and Unspecific.

Defendant cites four examples where it argues the fees
claimed by plaintiff should be denied because of their lack of
specificity and duplicative nature.  First, defendant argues that
Entry Number 384 should be deleted because it is unclear as to
what it is referring to.  The entry indicates that paralegal
Kelly Nardone spent 1.5 hours preparing deposition exhibits on
May 6, 1999.  Defendant contends that the last deposition was
conducted on February 16, 1999.  Plaintiff failed to respond to
defendant's request that the entry be deleted.  Because the court
can neither determine why plaintiff would have been preparing
deposition exhibits for a deposition that apparently was never
taken nor can it find any other reasonable explanation for the
entry, the court will delete the entry from its calculation of
the lodestar.

22

Defendant also argues that the hours claimed by plaintiff's counsel for: 1) preparation of direct and cross-examination, 2) the pretrial conference, and 3) the trial, are duplicative. The court finds, however, that the work done by both of plaintiff's attorneys was not duplicative. Plaintiff has offered a reasonable explanation for defendant's concern as to possible duplication in the preparation of direct and cross-examination. Based on plaintiff's proffered explanation, it does not appear that the work of the two attorneys was merely a duplication of effort.

Defendant also argues that Ms. Fentonmiller's trial time should be reduced. However, the court observed Ms. Fentonmiller's active participation at trial and found her to be an integral part of plaintiff's team. Ms. Fentonmiller examined several witnesses and was an active participant at the sidebars, neither of which a paralegal could have done. Accordingly, the court declines to reduce the time attributable to her attendance at trial.

Concerning both Ms. Fentonmiller and Mr. Mackaronis' attendance at the pretrial conference, the court finds that the time attributable to Ms. Fentonmiller's attendance should be deleted. Defendant points the court to the Rules and Guidelines for Determining Lodestar Attorneys' Fees in Civil Rights and Discrimination Cases which asserts that only one lawyer should be compensated for attending conferences. Likewise, Local Rule of Civil Procedure 106.6 requires the attendance of only one

23

attorney at the pretrial conference. Plaintiff has offered no
response to defendant's assertion that the attendance of both
attorneys at the pretrial conference was duplicative. There
being nothing before the court to indicate that the attendance of
both attorneys was necessary, the court will exclude the hours
attributable to Ms. Fentonmiller's attendance at the pretrial
conference.

K.   Hours that are Excessive.

Defendant further objects that the hours spent by Ms.
Fentonmiller in reviewing pre-trial procedures and preparation of
witnesses are excessive. Defendant offers no legal authority
which would mandate a finding by this court that those hours are
excessive. Therefore, the court does not agree with defendant's
assertion and will not reduce the hours attributable to these two
projects.

With the exceptions, noted above, the court finds the total
number of hours expended by Mackaronis and Fentonmiller to be
reasonable. Defendant has not challenged the hourly rates
charged by counsel. Thus, the court finds that the hourly rates
charged by each attorney in this matter are reasonable and
reflect the skill and experience of each individual.

In light of the above, the lodestar calculation for the fees
to be awarded is as follows:

Christopher Mackaronis:  658.75 hours at $290.00 per hour

Laura Fentonmiller:  606.15 hours at $200.00 per hour

Brian Cohen:  26 hours at $205.00 per hour

24

Timothy W. Seaver:  15.25 hours at $155.00 per hour

Lee Holland:  7.5 hours at $100.00 per hour

Kelly Nardone:  6.75 hours at $90.00 per hour

S. Jay Maguire:  10.50 hours at $100.00 per hour

Carol A. Frensilli:  9 hours at $70.00 per hour

TOTAL:              $322,998.75

Thus, with the total recited above reflecting the lodestar calculation, the court will now address the <u>Johnson</u> factors. The first is the time and labor required to litigate the suit, the second is the difficulty of the questions presented in the lawsuit, and the third is the skill required to perform the legal service.  While this was no doubt a strenuously litigated case, the issues involved were not particularly complex or novel.  The case did, however, require much work on the part of plaintiff's attorneys.  Accordingly, no adjustment to the lodestar figure,

---

* All work done by Mackaronis and Fentonmiller is figured at their current rate, rather than their historical rate, i.e., $290.00 and $200.00 respectively.  The court has done this to account for the delay in payment.  Defendant opposes any adjustment for delay in payment.  However, as the Fourth Circuit has noted, "delay in payment of attorney's fees `obviously dilutes the eventual award and may convert an otherwise reasonable fee into an unreasonably low one.'"  <u>Daly v. Hill</u>, 790 F.2d 1071, 1081 (4th Cir. 1986) (quoting <u>Johnson v. University College of the University of Alabama</u>, 706 F.2d 1205, 1210 (11th Cir. 1983)).  The <u>Daly</u> court determined that the district court had erred in failing to consider the effect of delay in payment in making a fee award.  <u>See id.</u>  The court did, however, leave "[t]he particular method of accounting for delay in payment [to] the discretion of the district court."  <u>Id.</u>  This court chooses to increase the hourly rates to reflect current market rates, an acceptable method according to <u>Daly</u>.

either downward or upward, is necessary based on factors one, two, or three.

The fourth factor, the preclusion of other employment, is not involved in this case, as nothing indicates the attorneys working on this case ceased representing other clients during the pendency of this matter or were negatively affected in their ability to do so. This factor is applicable only insofar as the attorneys could have undertaken similar employment had they not been representing plaintiff in this matter; there is, however, no evidence before the court of specific lost opportunities. In this respect, the case is no different from any other in which an attorney does not have time to devote to other cases because he is already working on a case. Accordingly, the factor does not merit an adjustment in the lodestar calculation.

The fifth factor, the customary fee for such services, weighs in favor of plaintiff. As noted above, the court has determined that the rates charged by plaintiff's counsel were reasonable. Plaintiff submitted ample documentation supporting this court's acceptance of the rates used by plaintiff's counsel. It appears that the proposed rates are in line not only with those of other attorneys doing similar work in the area, but also with the rates plaintiff's counsel has been awarded in similar cases.

The sixth factor addresses whether the fee was fixed or contingent. The materials submitted to the court do not indicate that the case was taken on a contingency basis. Therefore, there

26

is nothing before the court to suggest it appropriate for the court to adjust the lodestar calculation because of any risk undertaken by plaintiff's counsel.

The seventh factor addresses time limitations imposed by the client or circumstances. Because plaintiff's counsel has admitted that no priority work on this case was required which affected counsel's other legal work, this factor does not weigh in favor of a higher or lower fee.

The eighth factor relates to the amount in controversy and the results obtained. While plaintiff did not receive all the relief requested nor did she prevail on all her claims, she was awarded a substantial amount of money by the jury. As discussed earlier, this factor weighs in favor of the court's scrutinizing the time claimed by plaintiff's attorneys and excluding hours expended solely on the basis of unrelated and unsuccessful claims. For example, while defendant has asserted that the claim upon which plaintiff prevailed was dissimilar from all other claims in her case, the court does not agree with defendant's assessment. Therefore, the court has not excluded time for any hours expended on the hostile environment claim because they were undoubtedly related to the retaliation claim. Accordingly, the eighth Johnson factor has made it necessary for the court to examine each entry claimed by plaintiff to determine if it is so unrelated to the successful claim as to merit exclusion from the fee award.

27

The ninth factor is the experience, reputation, and ability of the attorneys. Because the attorneys for plaintiff were specialists in the field and demonstrated a high level of ability, this factor weighs in favor of an attorneys' fee award at the customary rates charged by plaintiff's counsel.

The tenth factor addresses the undesirability of the case. While plaintiff argues that this case was especially undesirable and merits an increased fee award, defendant does not agree with plaintiff's assessment. While the case was no doubt difficult because of defendant's status as a government entity, this standing alone does not make the case rise to a level or undesirability that should influence the fee award. The court finds no reason to adjust the lodestar figure calculated above based on this factor.

The eleventh factor is the nature and length of the attorney's professional relationship with the client and plaintiff concedes that this factor should not affect the fee awarded by this court. Finally, the last factor requires an examination of awards in similar cases. Upon review of the materials submitted by plaintiff, this factor supports an award in the manner calculated by the court, but does not require a further adjustment to the lodestar figure.

Upon a full examination of these factors and a calculation of the lodestar amount, the court finds that plaintiff is entitled to attorneys' fees in the amount of $322,998.75.

28

## L.    Expenses.

Plaintiff also requests an award for expenses in the amount of $18,880.75. Defendant contends that the figure for expenses is not reasonable because plaintiff failed to reduce that amount to take into account claims on which she was unsuccessful. Defendant also contends that some items are "inappropriately included, not sufficiently specific, and duplicative." (Def.'s Mem. Oppos. Pl.'s Mot. Attorneys' Fees and Expenses 24). Specifically, defendant asks the court to reduce the amount requested by: 1) deducting the expert fee paid to Dr. Kleinman because he did not testify in this case, 2) excluding the witness fees attributed to Douglas Duncan and Charles Thompson, and 3) reducing the remaining expenses by half. Plaintiff concedes the expenses for Duncan and Thompson should be deducted.

Prevailing parties in Title VII actions are entitled to recover those out-of-pocket expenses normally charged to a fee-paying client. The court has carefully reviewed the schedule of expenses and, with the exception of the $136.00 for Duncan and Thompson, finds these expenses were necessary to the preparation of the case, and, therefore, are compensable. Accordingly, plaintiff is entitled to expenses in the amount of $18,744.75.

## M.    Preparation of Fee Petition.

Plaintiff also requests an award in the amount of $12,663.00 for her work in preparing the fee petition. Defendant opposes the request, arguing that it is excessive and recommending an award that is half the amount requested by plaintiff.

29

A party is entitled to recover the time spent in preparing a fee petition. See Daly v. Hill, 790 F.2d 1071, 1080 (4th Cir. 1986). The court, having reviewed plaintiff's billing entries for this work, as well as the end result, is satisfied that the requested amount is reasonable. Accordingly, plaintiff is entitled to reimbursement for the 52.20 hours spent in preparing the fee petition.

## Pre- and Post-Judgment Interest

### A.  Pre-judgment Interest

Plaintiff argues that the jury award should be amended to add pre-judgment interest on the backpay award of $135,000.  She contends that pre-judgment interest is necessary to provide the "make whole" relief envisioned under Title VII.  Defendant counters that plaintiff should not be awarded pre-judgment interest because the backpay award presumably took into account plaintiff's demand for interest.

"A decision whether to award pre-judgment interest as a component of relief is entrusted to the discretion of the district court."  United States v. Gregory, 818 F.2d 1114, 1118 (4th Cir. 1987) (citing Albermarle Paper Company v. Moody, 422 U.S. 405 (1975)).  The court is in agreement with defendant on the issue of pre-judgment interest.  Plaintiff requested interest on her back pay at trial.  In explaining to the jury how she had arrived at an appropriate backpay amount, plaintiff factored interest into the amount she requested and came up with a figure of $217,000.  The jury knew that plaintiff was requesting

interest on her backpay; therefore, their award to plaintiff presumably includes the interest amount, if any, to which they felt she was entitled. Plaintiff is, in effect, asking the court to look behind the jury's verdict and determine that, when presented with a requested amount of backpay that took into account compensating her for the loss of her money preceding judgment, they did not do so. This it will not do. Accordingly, the court denies plaintiff's motion to amend the judgment to add pre-judgment interest.

B. Post-judgment Interest.

28 U.S.C. § 1961 allows prevailing plaintiffs to obtain post-judgment interest on all money judgments obtained in federal court. "Post-judgment interest is designed to compensate the plaintiff for the delay [she] suffers from the time damages are reduced to an enforceable judgment to the time the defendant pays the judgment." Andrulonis v. United States, 26 F.3d 1224, 1230 (2d Cir. 1994). Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment. § 28 U.S.C. 1961(a). Accordingly, plaintiff's motion for post-judgment interest is granted.

## Conclusion

For the reasons expressed above, defendant's motion to amend the judgment is granted and the court reduces the jury's award of $365,000.00 to $50,000.00 in compensatory damages to comply with the statutory cap and plaintiff's motion for a new trial or to reduce the compensatory damage and backpay awards is denied. Judgment shall enter in favor of plaintiff in the amount of $50,000.00 in compensatory damages and $135,000.00 in backpay in ten days unless plaintiff files a request for a determination of the factual issue underlying application of the statutory cap. Plaintiff's motion for attorneys' fees and expenses is granted in part and denied in part; plaintiff is awarded $322,998.75 in attorneys' fees, $18,744.75 in expenses, and $12,663.00 for preparing the fee petition. Finally, plaintiff's motion for pre-judgement interest is denied and her motion for post-judgment interest is granted.

A separate judgment order will be entered once the outstanding factual issue relative to the statutory cap is determined, or in ten days if plaintiff elects not to have the court decide that issue.

Dated this  14th  day of September, 2000.

David A. Faber
United States District Judge

32