IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GERALYN S. BUELL,

    Plaintiff,

v.                                        CIVIL ACTION NO. WMN-97-2302

MONTGOMERY COUNTY
REVENUE AUTHORITY,

    Defendant.

### MEMORANDUM OPINION

Following a five-day trial, the jury returned a verdict in
favor of plaintiff on her retaliatory discharge claim.  The jury
awarded plaintiff damages in the amount of $135,000.00 in backpay
and $365,000.00 in compensatory damages.  Currently pending
before the court are several post-trial motions, which the court
will consider in turn.

### *Motion for Reconsideration or, Alternatively, For an Award of Front Pay*

Plaintiff first asks the court to reconsider a portion of
its September 14, 2000, Memorandum Opinion, in which the court
determined that the jury's award of $365,000.00 in compensatory
damages did not include front pay.  Plaintiff again argues that
the issue of front pay was submitted to the jury for decision,
based upon the court's instructions, the evidence, and
plaintiff's closing argument.

The court adheres to its earlier determination and declines
to reconsider this issue.  As stated in the September opinion,
the court does not agree with plaintiff's assessment that

defendant agreed to submit the issue of front pay to the jury.
The court has again reviewed the relevant portion of the
transcript pointed to by plaintiff, and finds that there was no
waiver by the defendant on this issue. In the transcript,
defendant addresses the issue directly, stating that it is
improper to submit the issue of front pay to the jury, but
concluding that the instructions and verdict form were fine,
because they referred not to front pay, but to "other expenses
that are not back pay." Transcript, p. 10, attached as Exhibit C
to plaintiff's motion for reconsideration. Further, the
instructions do not specifically refer to "front pay" in the
manner that they refer to "back pay," and, as noted above, the
parties addressed this matter in the charge conference.
Accordingly, plaintiff's motion for reconsideration is DENIED.

## Request for Front Pay

The court must now address plaintiff's alternative request
for an award of front pay. Plaintiff argues that she prevailed
on her retaliation claim, that reinstatement to her old position
is impracticable, and thus the court should award her front pay
of a four to five-year duration to make her "whole." Defendant
argues that plaintiff is not entitled to front pay under the
facts of this case.

The Fourth Circuit Court of Appeals has stated that the
proper method for determining front pay "requires an analysis of
all the circumstances existing at the time of trial for the
purpose of tailoring a blend of remedies that is most likely to

2

make the plaintiff whole." Duke v. Uniroyal, Inc., 928 F.2d
1413, 1423 (4ᵗʰ Cir. 1991). The beginning point for such
analysis is the question of reinstatement. See id. If an
employee can be reinstated to his or her previous position, that
is often a better remedy than an award of front pay, which is
quite speculative, in that it is based upon a guess of whether
and for how long a plaintiff will work in the future. See id.
However, reinstatement is often impossible or inappropriate, as
in cases of extreme hostility or animosity due to the litigation,
or in general, and where no comparable position is available.
See id.

    The use of front pay as a substitute for reinstatement must
be "tempered," because of the potential for a windfall. See
Duke, 928 F.2d at 1424. Front pay can be "awarded to complement
a deferred order of reinstatement or to bridge a time when the
court concludes the plaintiff is reasonably likely to obtain
other employment." Id. In determining whether to award front
pay, courts have considered "the plaintiff's prospects of
obtaining comparable employment; the time period of the award;
whether the plaintiff intended to work; and whether liquidated
damages have been awarded." Ford v. Rigidply Rafters, Inc., 984
F. Supp. 386, 392 (D. Md. 1997). Another consideration is how
the plaintiff's health and age may affect her future prospects
for employment. See id. (citing Lewis v. Federal Prison
Industries, Inc., 953 F.2d 1277, 1280 (11ᵗʰ Cir. 1992)).

The court agrees with plaintiff that reinstatement to her former job would be impractical. Given defendant's small office structure and the protracted litigation that has taken place over the past few years, reinstatement would be inappropriate. However, the court deems an award of front pay inappropriate in this case. Plaintiff Buell was still young when her employment with the Revenue Authority was terminated, and she had little trouble finding comparable employment afterward. Plaintiff was released from the Revenue Authority in September 1995, after only four months of work, and began work at Hewlett Packard in early August, 1997. Because of her young age, plaintiff certainly intended to work again, and was able to do so within a fairly short time. Further, plaintiff received a generous damages award of $135,000.00 in back pay, and $365,000.00 in compensatory damages (although the latter may be reduced).

The instant case can be easily distinguished from Gu v. Hughes STX Corp., 2001 WL 95734 (D. Md. Feb. 1, 2001), cited as supplemental authority by the plaintiff. In Gu, the plaintiff was a highly skilled senior research scientist who worked for the defendant corporation for seven years. See Gu, 2001 WL 95734, at *4-5. After being discharged, Gu embarked on an unsuccessful four-year search to gain comparable employment. See id. at *8. In awarding her front pay for a four-year period, the District Court noted that her advanced age of 55 and her senior status likely limited the available offers of comparable employment, "thereby extending her employment search beyond average time

4

frames."  Id. at *10.  The court determined that front pay was
appropriate to make plaintiff whole for "the abrupt and prolonged
hiatus of her career."  Id. at *9.

Unlike the plaintiff in Gu, Ms. Buell only worked at the
Revenue Authority for a few months.  As noted above, she was
younger than Ms. Gu, and no "prolonged hiatus" of her career
ensued from her discharge.  Plaintiff is currently working, and
has moved up quickly during her employment with Hewlett Packard.
The Gu case does not support plaintiff's argument that she is
entitled to an award of front pay for a period of four to five
years.  Accordingly, the court finds that an award of front pay
in this case would be inappropriate, and the motion for front pay
is DENIED.

## Applicability of the Damage Cap/Number of Employees

In its Memorandum Opinion of September 14, 2000, this court
determined that on the basis of plaintiff's filing with the EEOC,
the number of employees at the Revenue Authority in 1995 was
fewer than 101 (Mem. Op. p. 5).  This finding would in turn,
require the court to reduce plaintiff's compensatory damage award
from $365,000.00 to $50,000.00, by applying the statutory damages
cap found at 42 U.S.C. § 1981a(b)(3).  However, because plaintiff
indicated that she had evidence proving that defendant had more
employees than it admitted, the court gave her an opportunity to
submit such evidence and to request a determination of this
factual issue.  In compliance with that directive, plaintiff
submitted a memorandum on the applicability of the damage cap,

5

along with two affidavits regarding the number of defendant's employees.

The two affidavits submitted by the plaintiff are of little help to her position. One is an affidavit of plaintiff, Ms. Buell, and the other is an affidavit of Joseph M. Mott, a former board member and chairman of the Revenue Authority. Both affidavits attempt to prove that seasonal employees of the Revenue Authority made the total number of employees more than 100 in 1995. The court is not convinced by these affidavits. Although defendant does not raise this point, it appears to the court that even with these new affidavits, plaintiff has not proven that there were more than 100 employees "in each of 20 or more calendar weeks" that year. 42 U.S.C. § 1981a(b)(3). In fact, reading the two affidavits together, it appears that there were "approximately 100" employees of the Revenue Authority in 1995 (Mott Affidavit p. 3); and then an additional 16-24 seasonal employees who worked for four months (May through August), for a total of only 16 weeks (Buell Affidavit p. 2). Thus, even when counting the seasonal employees, these affidavits do not compel the conclusion that the Revenue Authority had more than 100 employees in each of *20 or more calendar weeks* in 1995. If there were more than 100 employees at the Revenue Authority in 1995, it was only for 16 weeks, rather than 20.

Thus, the court finds that plaintiff's new evidence fails to show that the Revenue Authority had more than 100 employees in 1995. The court is constrained by its earlier determination

6

that, based on plaintiff's filing with the EEOC, the number of employees in 1995 was fewer than 101. Defendants previously submitted an affidavit of Gayle Jamison in further support of its claim that there were fewer than 101 employees in 1995. However, the court still finds no need to consider this affidavit. Further, the court declines to address plaintiff's argument that a higher damages cap should apply because Montgomery County is the entity liable to her; that argument has already been addressed by the court and will not be revisited. The named defendant in this action is Montgomery County Revenue Authority, not Montgomery County, Maryland. Accordingly, pursuant to 42 U.S.C. § 1981a(b)(3), and the weight of the evidence in this case, it is ORDERED that plaintiff's compensatory damage award is capped at $50,000.00.

## Motion for Supplemental Award of Attorney's Fees

As determined by the court in its September 14 opinion, plaintiff, as the prevailing party in her Title VII case, is entitled, at the court's discretion, to an award of reasonable attorneys' fees and expenses. 42 U.S.C. §§ 2000e-5(k). In assessing the reasonableness of attorneys' fees, this court is guided by the factors first articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) (abrogated on other grounds), and later endorsed by the Court of Appeals for the Fourth Circuit. See Trimper v. City of Norfolk, 58 F.3d 68 (4th Cir. 1995). These factors are:

7

(1) the time and labor required to litigate the suit;
(2) the novelty and difficulty of the questions
presented by the lawsuit; (3) the skill required
properly to perform the legal service; (4) the
preclusion of other employment opportunities for the
attorney due to the attorney's acceptance of the case;
(5) the customary fee for such services; (6) whether
the fee is fixed or contingent; (7) time limitations
imposed by the client or the circumstances; (8) the
amount in controversy involved and the results
obtained; (9) the experience, reputation, and ability
of the attorney; (10) the "undesirability" of the case;
(11) the nature and length of the attorney's
professional relationship with the client; and (12)
awards in similar cases.

Trimper, 58 F.3d at 73.   The Johnson approach to fee calculation

begins with a determination of a base amount known as the

"lodestar" which is arrived at by multiplying the number of hours

reasonably expended by a reasonable hourly rate and then adjusted

upward or downward based on the twelve factors listed above.   As

the Eleventh Circuit has noted:

First, the court must ascertain the nature and extent
of the services supplied by the attorney.  If the court
finds the number of hours excessive, it should identify
the hours disallowed and explain why it is disallowing
them . . . .  Second, the court must determine the
value of the services rendered according to the
customary charges in the area and the quality of the
work produced.  Special experience or expertise, or the
lack of it, will be reflected in the hourly rate
allowed.  When the court has finished these two steps
and arrived at a nominal fee, it should then consider
the remaining Johnson factors appropriate to the
particular case and briefly articulate how each of
these factors affect the final compensation.

Fitzpatrick v. Internal Revenue Service, 665 F.2d 327, 332 (11th

Cir. 1982) (citation omitted).

In calculating the lodestar, a court should include all time

which it deems reasonable to have devoted to the case, provided

8

that such time is properly documented.  See generally Virginia Academy of Clinical Psychologists v. Blue Shield of Virginia, 543 F. Supp. 126 (E.D. Va. 1982).  In the instant case, counsel for plaintiff previously submitted to the court a detailed statement of the amount of hours worked by the attorneys and paralegals working on the case. After analyzing the various time entries and ruling upon defendant's objections, the court calculated the lodestar figure, addressed the Johnson factors, and ultimately determined that plaintiff was entitled to $322,998.75 in attorneys' fees; $18,744.75 in expenses, and $12,663.00 for preparation of the fee petition.  Plaintiff's counsel has now submitted a motion for supplemental attorneys' fees, incurred since March 21, 2000.

Plaintiff claims an additional 90.95 hours worth of work on this case.  Of this amount, 85.95 hours are time spent by attorneys on the case, and 5.0 hours are attributable to paralegal work.  Defendant has again submitted a number of objections, directed at the reasonableness of the attorneys' fees.  Defendant objects to the additional hours submitted for final preparation of the fee petition, various post-trial motions, and other additional hours.  The court will consider the objections in turn.

## A.  Fee petition

Plaintiff's original request for attorneys' fees included 52.20 hours for preparation of the fee petition.  In its September 14 Opinion, the court granted plaintiff's request,

9

finding that she was entitled to reimbursement for the full amount, despite defendant's objection that the amount was excessive (Mem. Op. p. 30). Plaintiff now requests reimbursement for an additional 9.55 hours spent on the petition.

A party is entitled to recover the time spent in preparing a fee petition. See Daly v. Hill, 790 F.2d 1071, 1080 (4th Cir. 1986). As noted above, the court previously found counsel's time spent on the fee petition reasonable. In accordance with that prior ruling, the court is satisfied that an additional 9.55 hours is reasonable, and plaintiff is entitled to reimbursement for the 9.55 hours.

## B.  Hours expended on post-trial motions

Defendant next objects to plaintiff's requested fees for hours worked on various post-trial motions. Specifically, defendant objects to the following: plaintiff's hours spent responding to defendant's motion to alter or amend the judgment; plaintiff's hours spent on her post-trial motion for pre- and post-judgment interest; and hours spent on plaintiff's response regarding the applicability of the damage caps, and her request for front pay. Defendant's objections are, for the most part, based upon the fact that plaintiff has not prevailed upon all of these issues.

In its prior opinion, the court adjusted plaintiff's attorneys' fees downward by disregarding some of the time sheet entries which were unrelated to the plaintiff's one ultimately successful claim. As noted previously, "[w]hen plaintiff

10

prevails on only some of the claims made, the number of hours may be adjusted downward; but where full relief is obtained, the plaintiff's attorney should receive `a fully compensatory fee,' and in cases of exceptional success, even an enhancement." <u>Rum Creek Coal Sales, Inc. v. Caperton</u>, 31 F.3d 169, 174-75 (4ᵗʰ Cir. 1994) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 435 (1983)). "[E]ntitlement to fees for one aspect of a protracted litigation does not turn narrowly on whether the party prevailed on that particular matter, but whether a separate claim, or . . . a separate proceeding is so unrelated as to justify treating it as a "separate lawsuit[]." <u>Hensley</u>, 461 U.S. at 435. District courts should not draw overly fine distinctions in making this determination. Certainly, where the issues presented in the later proceedings or in separate claims involve the same common core of facts or related legal theories, the case "cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." <u>Id.</u>

Defendant first objects to plaintiff's time spent on opposing the defendant's motion to alter or amend the judgment. Defendant's motion requested that the court apply the statutory cap on damages in this case, which it now has. <u>See supra</u>. Defendant argues that because plaintiff's damage award has been reduced, she should have adjusted the hours requested accordingly. Defendant cites no authority for its position, and

11

the court finds that the statutory cap issue was intertwined with plaintiff's prevailing claim. Thus, the court finds the time plaintiff expended on this issue reasonable, and declines to reduce or exclude any time.

Defendant next asserts that because the court denied plaintiff's request for pre-judgment interest, plaintiff's time spent on the motion for such should be deleted. Defendant also argues that plaintiff should be entitled to only one hour spent on preparing the motion for post-judgment interest, because the law is clear on that issue, and defendant did not oppose the motion. Again, defendant cites no authority for this request, and the court finds these motions sufficiently intertwined with plaintiff's prevailing claim to allow her to recoup her time spent on them. Therefore, the court declines to reduce the hours spent preparing the motions for pre- and post-judgment interest.

Next, defendant asserts that if the court denies plaintiff's motion for reconsideration and her alternative request for front pay, then no fees should be awarded for her research on these issues. The court disagrees with defendant. In its prior opinion, this court declined to exclude plaintiff's fees expended on two motions for reconsideration, finding them to be "intertwined with the claim upon which plaintiff ultimately prevailed and . . . not so removed as to justify treating them as a separate suit." (Sept. 14, 2000 Mem. Op. p. 20).

As Hensley makes clear, it is not necessary that plaintiff prevail on every aspect of protracted litigation in order to

12

recover attorneys' fees therefore. The court invited plaintiff to submit materials in support of her position on the applicability of damage cap. The motion for reconsideration and request for front pay were intertwined with plaintiff's prevailing claim, and could not be easily separated. Further, plaintiff's argument that Montgomery County was her true employer, although rejected by the court, was only a very small part of her motion. For all of these reasons, defendant's request that these fees be excluded is denied.

## C. Other hours claimed

Defendant further requests that the court exclude other hours submitted by the plaintiff for time spent on various tasks, such as telephone conversations between plaintiff and her attorneys and additional research. The court has reviewed the time entries submitted, and finds that they are reasonable. Defendant offers no legal authority which would mandate a finding by this court that the hours in question are excessive or unreasonable. Therefore, the court declines to reduce the additional hours submitted.

The court previously determined that the hourly rates charged by each attorney in this matter were "reasonable and reflected the skill and experience of each individual." (Sept. 14, 2000 Mem. Op. p. 24). In light of this, and based upon the foregoing, the lodestar calculation for the fees to be awarded is as follows:

13

```
Christopher Mackaronis: 44.15 hours at $290.00 per hour
Laura Fentonmiller:      41.80 hours at $200.00 per hour
S. Jay McGuire:           3.00 hours at $100.00 per hour
Carol Frensilli:          2.00 hours at $70.00 per hour
TOTAL:            $21,603.50
```

The total represented above is the lodestar calculation for plaintiff's supplemental award of attorneys' fees. After calculating the lodestar in its prior opinion of September 14, 2000, this court then addressed the Johnson factors, cited above. In that opinion, the court found no adjustment, either upward or downward, to the fee award necessary based upon any of the factors, except number eight. (Sept. 14, 2000 Mem. Op. p. 25-28). The eighth factor relates to the amount in controversy and the results obtained. As discussed earlier, this factor weighs in favor of the court's scrutinizing the time claimed by plaintiff's attorneys and excluding hours expended solely on the basis of unrelated and unsuccessful claims. The court has so examined the supplemental time entries, and has found all of them sufficiently intertwined with plaintiff's prevailing claim to award the fees incurred with them. Accordingly, the court deems it unnecessary to address all of the Johnson factors again, as the result would be the same as in the court's earlier opinion. No adjustment upward or downward to the lodestar calculation is necessary. Based upon the foregoing, the court finds that plaintiff is entitled to a supplemental award of attorneys' fees in the amount of $21,603.50.

14

## *Interest on Award of Attorneys' Fees*

Plaintiff requests, pursuant to 28 U.S.C. § 1961(a) and Daly v. Hill, 790 F.2d 1071 (4ᵗʰ Cir. 1986), that the court add interest to the award of attorneys' fees and expenses calculated in the court's September 14, 2000 Memorandum Opinion.  Defendant opposes this request, although noting that should the court award interest, that interest should not accrue from September 14, 2000, because no judgment order has yet been entered in this case.

The Fourth Circuit Court of Appeals has stated that "[c]ivil rights litigation often spans several years, and consequently compensation [for attorneys' fees] . . . often occurs long after the relevant services have been rendered."  Daly, 790 F.2d at 1081.  "This delay in payment of attorney's fees `obviously dilutes the eventual award and may convert an otherwise reasonable fee into an unreasonably low one.'"  Id.  Courts have adopted varying approaches to account for the effect of this delay in payment.  See id.

28 U.S.C. § 1961(a) allows prevailing plaintiffs to obtain post-judgment interest on all money judgments obtained in federal court.  "Post-judgment interest is designed to compensate the plaintiff for the delay [she] suffers from the time damages are reduced to an enforceable judgment to the time the defendant pays the judgment."  Andrulonis v. United States, 26 F.3d 1224, 1230 (2d Cir. 1994).  Such interest shall be calculated from the date of the entry of the judgment.  See 28 U.S.C. § 1961(a).  This

15

court has reason to believe that the Fourth Circuit Court of
Appeals has not expressly decided whether an award of attorneys'
fees in a civil rights case is a "money judgment" which accrues
interest under 28 U.S.C. § 1961(a).

The court notes that most circuits dealing with this issue
have determined that the "any money judgment" provision of 28
U.S.C. § 1961(a) includes a judgment awarding attorneys' fees.
See Assoc. General Contractors, Inc. v. Drabik, 250 F.3d 482, 485
(6th Cir. 2001) (listing cases from the First, Third, Fifth,
Seventh, Eighth, Ninth, Tenth, Eleventh and Federal Circuits).
Although the Fourth Circuit has not spoken directly on this
issue, this court deems it appropriate to award plaintiff
interest on her attorneys' fee award in this case, given that
such a ruling has been upheld in most of the other circuits.
Further, the court feels that such a ruling is in accordance with
the language of the statute, which allows interest on any "money
judgment" recovered in district court.  28 U.S.C. § 1691(a).  In
addition, the Fourth Circuit has noted that "the particular
method of accounting for delay in payment is within the
discretion of the district court."  Daly v. Hill, 790 F.2d 1071,
1081 (4th Cir. 1986).  Accordingly, plaintiff's motion to add
interest to her attorneys' fee award is GRANTED.

However, the remaining issue here is the question of when
the interest on the award of attorneys' fees begins to accrue.
This is an entirely different matter, and one that has produced a

16

circuit split.  See Drabik, 250 F.3d at 486.[1]  The specific question most recently dealt with by the Sixth Circuit was the following:  Whether an award of attorneys' fees accrues interest from the date of the judgment that unconditionally entitles the prevailing party to reasonable attorneys' fees, or the date of the judgment quantifying that fee award.  See id. at 485.  The Sixth Circuit and most other circuits, have ruled that "a judgment that unconditionally entitles a party to reasonable attorney fees is the `money judgment' contemplated by [section] 1961."  Id. at 490.  Again, there appears to be no published Fourth Circuit case law on this specific question.

Defendant is correct in asserting that no final judgment has been entered in the instant case.  The court's September 14, 2000 Memorandum Opinion ruled upon several motions, but left open the issue of the statutory cap, pending further briefing from the parties. (Mem. Op. p. 32).  The court noted that a separate judgment order would be entered after that issue was resolved. (Mem. Op. p. 32).  Regardless of how the circuit courts have come

---

[1]Compare Eaves v. County of Cape May, 239 F.3d 527, 530 (3d Cir. 2001) (holding that interest is calculated from the date of judgment quantifying attorney fees); MidAmerica Fed. Sav. & Loan Assoc. v. Shearson/American Express, Inc., 962 F.2d 1470, 1475-76 (10th Cir, 1992) (same); with Friend v. Kolodzieczak, 72 F.3d 1386, 1391 (9th Cir. 1995) (holding that interest is calculated from the date of judgment unconditionally entitling the prevailing party to attorney fees); BankAtlantic v. Blythe Eastman Pain Webber, Inc., 12 F.3d 1045, 1052-53 (11th Cir. 1994) (same); Jenkins v. State of Missouri, 931 F.2d 1273, 1275 (8th Cir. 1991) (same); Mathis v. Spears, 857 F.2d 749 (Fed. Cir. 1988) (same); Copper Liquor, Inc. v. Adolph Coors Co., 701 F.2d 542-43 (5th Cir. 1983) (en banc) (same).

17

down upon the issue of when interest accrues on an award of attorneys' fees, one thing is common: in the various cases, a valid, final judgment on the merits had been entered. See, e.g., Drabik, 250 F.3d at 490-91; Eaves v. County of Cape May, 239 F.3d 527, 528 (3d Cir. 2001); see generally Friend v. Kolodzieczak, 72 F.3d 1386 (9th Cir. 1995); Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319 (5th Cir. 1995); BankAtlantic v. Blythe Eastman Paine Webber, Inc., 12 F.3d 1045 (11th Cir. 1994).

For example, in Assoc. General Contractors v. Drabik, the plaintiffs prevailed in a suit against the State of Ohio. See 250 F.3d 482, 483 (6th Cir. 2001). The district court entered a final judgment on the merits that included an award of "reasonable attorney fees" to the plaintiffs. Id. at 492. Eleven months later, the court set forth the amount of the fee award in a separate judgment. See id. at 483. The Sixth Circuit determined that the interest on the award should run from the date of the judgment entitling the plaintiffs to attorneys' fees. See id. at 492. In the instant case, this court granted plaintiff's request for attorneys' fees in a memorandum opinion, but never entered a final judgment on the merits, due to outstanding factual issues.

Upon reviewing the case law, the court feels that the situation in the instant case is unique, in that no final judgment has been entered. Indeed, the court could not enter a final judgment until resolving the statutory cap issue in this case. See supra. Due to this unique situation, the court will

18

not take a position on the issue of when interest on an attorneys' fee award should accrue. Rather, the court deems it appropriate to grant interest on the plaintiff's attorneys' fee award from the date of the only judgment order in this case: the one following this opinion.

The court feels that such an award of interest, combined with the calculation of attorneys' fees at the current, rather than historical, billing rate sufficiently accounts for any delay in payment. See Daly v. Hill, 790 F.2d at 1081. In its prior opinion of September 14, 2000, this court set forth its remedy for any delay in payment. The footnote on page 25 of the opinion reads, in pertinent part, as follows:

> All work done by Mackaronis and Fentonmiller is figured at their current rate, rather than their historical rate, i.e., $290.00 and $200.00 respectively. The court has done this to account for the delay in payment. . . . The Daly court determined that the district court had erred in failing to consider the effect of delay in payment in making a fee award. The court did, however, leave "[t]he particular method of accounting for delay in payment [to] the discretion of the district court." [Daly v. Hill, 790 F.2d at 1081]. This court chooses to increase the hourly rates to reflect current market rates, an acceptable method according to Daly.

(Sept. 14, 2000 Mem. Op., p. 25 n.).

Plaintiff agrees with the court that the method of accounting for delay is left up to the district court's discretion. The court feels that it has determined an appropriate method to account for the delay in this case. Plaintiff received a substantial award of attorneys' fees and expenses here - nearly $400,000.00 -- in a case that is not

19

terribly old.  She received attorneys' fees calculated at the
current rate, and also received an award of interest on the fees.
Further, the court does not feel that the delay in payment here
has converted the fee "into an unreasonably low one."  Daly, 790
F.2d at 1081.  Accordingly, the motion to add interest to the
attorneys' fee award is granted, and the interest shall run from
the date of the entry of the judgment order following this
opinion.

## Calculating Post-judgment interest

In its September 14, 2000 Memorandum Opinion, the court
granted plaintiff's motion for post-judgment interest in this
case, pursuant to 28 U.S.C. § 1961(a).  Such interest shall be
calculated from the date of the entry of the judgment.  See 28
U.S.C. § 1961(a).

At the time of the court's September 14, 2000 Memorandum
Opinion, post-judgment interest was calculated at a rate equal to
the coupon issue yield equivalent (as determined by the Secretary
of the Treasury) of the average accepted auction price for the
last auction of fifty-two-week United States Treasury bills
settled immediately prior to the date of the judgment.  See 28
U.S.C. § 1961(a).  However, since that time, the statute has been
amended.  Post-judgment interest shall now be calculated "at a
rate equal to the weekly average 1-year constant maturity
Treasury yield, as published by the Board of Governors of the
Federal Reserve System, for the calendar week preceding the date
of the judgment."  Id. § 1961(a) (as amended Dec. 21, 2000).

20

## Conclusion

For the reasons expressed above, plaintiff's motion for
reconsideration, or alternatively, for an award of front pay is
DENIED.  After considering the parties' submissions regarding the
applicability of the statutory cap, the court finds that the cap
should apply, and reduces the jury's award of $365,000.00 to
$50,000.00 in compensatory damages to comply with the statutory
cap.  Plaintiff's motion for a supplemental award of attorneys'
fees is GRANTED; plaintiff is awarded an additional $21,603.50 in
attorneys' fees.  Finally, plaintiff's motion to add interest to
her attorneys' fee award is GRANTED; such interest shall run from
the date of entry of the judgment order following this opinion.

A separate judgment order will be entered this day,
incorporating both the court's rulings in the instant opinion,
and its rulings in the September 14, 2000 Memorandum Opinion.

Dated this **27th** day of July, 2001.

David A. Faber
United States District Judge

21

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

**David A. Faber**
**Judge**

**United States Courthouse**
**110 North Heber Street**
**Beckley, WV 25801**

**(304) 253-2438**
**(304) 253-6811 FAX**
**David_Faber@wvsd.uscourts.gov**

July 26, 2001

Ms. Felicia C. Cannon, Clerk
U.S. District Court - Dist. of Md.
Edward A. Garmatz U.S. Courthouse
101 W. Lombard Street
Baltimore, Maryland 21201-2690

Re: Buell v. Montgomery County Revenue Authority
        Civil Action No. WMN-97-2302

Dear Ms. Cannon:

        Enclosed for filing are the court's Memorandum Opinion
and Judgment Order in the above-referenced case.  I will return
the original court file under separate cover.

        I appreciate your many courtesies extended in this
matter.

                        Sincerely,

                        David A. Faber

DAF:lk